IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HENRY MELENDEZ,

    Plaintiff,

v.

DR. GARTH GULICK and DR. BRISTOL,

    Defendants.

2:17-CV-1810-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

Plaintiff Henry Melendez, an incarcerated prisoner proceeding *pro se* and *in forma pauperis*, filed this action against defendants Dr. Garth Gulick, Dr. Bristol, and Brad Cain on November 13, 2017. By and through his complaint as originally filed, Melendez appeared to allege all defendants' liability under 42 U.S.C. § 1983 for the violation of his Eighth Amendment and, apparently, Fourteenth Amendment right to freedom from cruel and unusual punishment, as

Page 1 - OPINION AND ORDER

well as all defendants' liability under the Oregon Constitution for violation of the same right. In support of his claims, Melendez alleged purportedly wrongful conduct of Gulick and Bristol (specifically, those defendants' alleged denial of adequate medical treatment in connection with Melendez' complained-of shoulder pain), but offered no allegation that Cain had participated in the alleged deprivation of his rights.

On November 20, 2017, Judge Mosman dismissed Melendez' claim(s) to the extent alleged against Cain, on the ground that there was no allegation from which it could be inferred that Cain participated in the alleged wrongful conduct, and additionally dismissed Melendez' claim(s) to the extent alleged to arise under the Fourteenth Amendment, on the ground that the Fourteenth Amendment does not guarantee the right of incarcerated prisoners to receive adequate medical care. Judge Mosman granted Melendez leave to amend his pleading to cure its identified deficiencies within thirty days. On November 29, 2017, Melendez amended his complaint, abandoning his claim(s) to the extent alleged against Cain and clarifying that his claim arising out of alleged denial of adequate medical care arises under the Eighth Amendment and the Oregon Constitution only.

By and through his amended complaint, Melendez argues that remaining defendants Gulick and Bristol improperly delayed his receipt of medical treatment for his complained-of shoulder pain and ultimately provided inadequate medical treatment for that condition. Arising out of the foregoing, Melendez appears to allege defendants' liability under Section 1983 in both their official and their individual capacities for the violation of his Eighth Amendment right to adequate medical care while incarcerated and under the Oregon Constitution for violation of that same right. Melendez seeks award of compensatory and punitive damages in the amount of $4

Page 2 - OPINION AND ORDER

million. This court has federal question jurisdiction over Melendez' Eighth Amendment claim pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Melendez' Oregon Constitutional claim pursuant to 28 U.S.C. § 1367.

Now before the court is defendants' motion (#23) for summary judgment. I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, defendants' motion (#23) for summary judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the

Page 3 - OPINION AND ORDER

United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

## MATERIAL FACTS

### I. The Parties

Plaintiff Melendez is an incarcerated prisoner currently housed in the Snake River Correctional Institution ("SRCI"). Defendant Gulick is a physician employed to provide medical services to prisoners incarcerated at SRCI. Defendant Bristol is a physician who provided medical services to Melendez.

### III. The Parties' Dispute

#### A. Melendez' Allegations in Support of his Claims

Although not material to resolution of defendants' motion for summary judgment, I summarize Melendez' allegations in support of his claims in order to provide context for discussion of the merits of defendants' motion.

Melendez alleges as follows. Melendez first began complaining to the defendants regarding neck and shoulder pain on February 22, 2013. *See* Amended Complaint (#9) at 6. When defendants failed to provide him with medical care in connection with his complained of symptoms, he complained again on April 7, 2013. *See id.* He was seen by defendant Gulick on April 19, 2013, at which time Gulick opined that an MRI scan would not be the appropriate diagnostic tool to determine the cause of his symptoms. *See id.* at 8. In approximately July 2013, Melendez requested a second opinion. *See id.* Gulick arranged for Melendez to be seen by

Page 4 - OPINION AND ORDER

defendant Bristol in November or December 2013, at which time Bristol likewise declined to recommend that Melendez undergo an MRI scan. *See id.* Melendez was nevertheless approved for an MRI scan which took place on October 22, 2014, and was repeated on April 20, 2015. *See id.* at 7. He underwent surgery on his left shoulder on July 28, 2015. *See id.* He was seen by a specialist in connection with symptoms in his right shoulder on August 29, 2016, and underwent a CT scan oh his right shoulder on November 21, 2016. *See id.* He was approved for surgery on his right shoulder on December 7, 2016, and underwent the approved surgery on February 22, 2017. *See id.* Defendants failed to follow up on Melendez' surgeries by prescribing him medically necessary physical therapy. *See id.* at 4-5. It is Melendez' position that the delay between his first pain complaint and his final surgical intervention was the result of defendants' deliberate indifference to his medical needs. *See id.* at 7-8. It is further Melendez' position that the delay caused him to suffer permanent injury. *See id.* at 8.

### B. The Parties' Evidentiary Proffers[1]

Melendez has been in custody at SRCI since January 9, 2012. *See* Declaration (#24) of Christopher DiGiulio, M.D. ("DiGiulio Decl."), ¶ 3. Melendez first began complaining of joint pain to SRCI physicians in March 2012. *See id.*, ¶ 10. He appears to have been diagnosed with rheumatoid arthritis, an incurable degenerative disease of the joints. *See id.*, ¶¶ 6-8, 36. SRCI Health Services at first attempted conservative approaches to managing his complained-of shoulder pain, beginning in March 2012 with pain medications including Naproxen, Desipramine, Nifedipin/Lidocaine ointment, Capsaicin cream, Ketoprofen, Prednisone, Ultram,

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Methotrezate, Sulfasalazine, Hydroxychloroquine, Oxycontin, Enbrel injections, and Hydrocodone. *See id.*, ¶ 10. Over the two to three following years, Melendez underwent multiple X-ray studies of both his shoulders, CT scans of both shoulders, and consultation with orthopedists, including a shoulder specialist. *See id.*; *see also* Melendez' Opposition (#28) to Defrendants' Motion for Summary Judgment ("Opposition"), Exh. 3 at 51-54. Apparently in late 2014, Melendez was approved for left shoulder replacement surgery. *See* DiGiulio Decl., ¶ 10. The surgery was originally scheduled for January 2015, but the orthopedic surgeon scheduled to perform the surgery canceled the procedure and referred Melendez to a shoulder specialist, Dr. Scott C. Humphrey. *See id.*, ¶¶ 10-11. Humphrey evaluated Melendez for surgery, apparently ordering the MRI study that Melendez alleges took place on April 20, 2015. *See id.*, ¶ 10. Humphrey ultimately performed the procedure on July 28, 2015. *See id.* Because Melendez complained of similar symptoms in his right shoulder, Humphrey opined that Melendez should be considered for right shoulder replacement surgery about six months after the left shoulder replacement procedure, in order to give the left shoulder time to heal. *See id.* SRCI Health Services prescribed Melendez with physical therapy exercises he could perform on his own in his cell, and additionally saw him in the SRCI clinic for Theraband and stretching exercises for his left shoulder. *See id.* Melendez additionally consulted with Humphrey every few weeks for the next several months. *See id.*, ¶ 11. During this time, Melendez was receiving NSAID drugs for treatment of his right shoulder pain symptoms. *See id.* Melendez underwent diagnostic studies of his right shoulder on August 25, 2015, August 3, 2016, and October 7, 2016. *See* Opposition, Exh. 3 at 55-56, 64-66.

Humphrey again examined Melendez' shoulders on December 17, 2015. *See* DiGiulio

Decl., ¶ 11. Humphrey opined that the condition of Melendez' right shoulder was comparable to the pre-replacement condition of his left shoulder. *See id.* Humphrey further opined that Melendez had difficulty in raising his left arm and suffered pain in his left shoulder at the extremes of his range of motion, and prescribed a reduction in Melendez' three daily stretching exercises to one daily stretching exercise, recommending that Melendez find work at SRCI that involved less lifting than did his job in the SRCI laundry. *See id.* Humphrey opined that Melendez was a good but not ideal candidate for right shoulder replacement. *See id.*

On January 20, 2016, Melendez was approved for trial of Humira in place of Enbrel for treatment of his rheumatoid arthritis pain. *See id.*, ¶ 12. On March 9, 2016, Melendez received a corticosteroid shot in his right shoulder for treatment of his pain symptoms. *See id.*, ¶ 13; *see also* Opposition, Exh. 3 at 58-59. On April 11, 2016, Melendez underwent an X-ray study of his neck, which revealed only slight straightening of normal cervical lordosis and mild disc space narrowing. *See* DiGiulio Decl., ¶ 14.

On April 13, 2016, Gulick postponed Melendez' right shoulder replacement surgery due to Melendez' receipt of the corticosteroid injection in March 2016. *See id.*, ¶ 15. On April 20, 2016, Melendez was re-approved for right shoulder replacement. *See id.*, ¶ 16.

On April 21, 2016, Melendez complained at SRCI Health Services of increased right shoulder pain. *See id.*, ¶ 17. Gulick consulted with Melendez in connection with his increased pain symptoms on May 11, 2016. *See id.*, ¶ 18. On May 30, 2016, Melendez consulted with an SRCI physical therapist who provided him with instruction regarding his prescribed physical therapy exercises. *See id.*, ¶ 19. On August 24, 2016, Melendez discontinued Humira and returned to using Enbrel. *See id.*, ¶ 20.

Page 7 - OPINION AND ORDER

On August 29, 2016, Melendez consulted with an orthopedist who ordered a CT scan of his right shoulder. *See id.*, ¶ 21; *see also* Opposition, Exh. 3 at 60-61. The orthopedist opined that Melendez was a good candidate for a hemiarthroplasty of his right shoulder. *See* DiGiulio Decl., ¶ 21. On August 31, 2016, Melendez was approved for a CT scan. *See id.*, ¶ 22. On October 7, 2016, Melendez underwent an X-ray study of his right shoulder which revealed significant progression of his rheumatoid arthritis in that joint. *See id.*, ¶ 23. On October 24, 2016, Melendez consulted a second time with the orthopedist who had recommended hemiarthroplasty; the orthopedist repeated that recommendation. *See id.*, ¶ 24. On December 7, 2016, Melendez was approved for right shoulder replacement. *See id.*, ¶ 25; *see also* Opposition, Exh. 3 at 57.

On February 2, 2017, Melendez underwent another X-ray study of his right shoulder. *See* DiGiulio Decl., ¶ 28. On February 13, 2017, Gulick prescribed Melendez with a "low bunk" for a period of one year. *Id.*, ¶ 29.

On February 22, 2017, Melendez underwent right shoulder replacement surgery. *See id.*, ¶ 30. Melendez consulted with the surgeon who performed the procedure once each month for the next following four months for post-surgical follow up. *See id.*, ¶¶ 31-35. On June 19, 2017, Melendez reported no pain symptoms in his right shoulder. *See id.*, ¶ 35.

## ANALYSIS

### I. Melendez' Eighth Amendment Claim

Melendez' Eighth Amendment claim is premised on the theory that defendants Gulick and Bristol violated his rights under the Eighth Amendment by delaying and/or denying medically necessary treatment for his shoulder pain from February 22, 2013, to February 22, 2017, and by

refusing to provide him with medically necessary post-surgical physical therapy out of deliberate indifference to his serious medical needs. It is well established that a public official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To prevail on an Eighth Amendment deliberate indifference claim, a prisoner must establish both (i) that he suffered an objectively serious illness or injury while incarcerated and (ii) that prison officials were subjectively aware of the seriousness of the condition and deliberately denied or delayed access to medical care that could reasonably have been provided. *See Clement v. Gomez*, 298 F.3d 898, 904-905 (9th Cir. 2002). The objective component is satisfied "whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 904 (internal quotation marks omitted), *citing McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *quoting Estelle*, 429 U.S. at 104. Under *Estelle*, to establish a defendant's subjective deliberate indifference requires a showing "of something more than mere negligence," *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988), rising to the level of "a purposeful act or failure to act on the part of the defendant" notwithstanding the defendant's knowledge that such act or failure to act was likely to harm the plaintiff, *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

A finder of fact could not reasonably conclude on the basis of the evidentiary record herein that either defendant purposefully delayed or denied reasonably necessary medical care to Melendez notwithstanding a risk known to either defendant that such delay or denial was likely to harm Melendez. First, as to defendant Bristol, there is no evidence of record with any tendency to establish that he played any role in any of the complained-of conduct. Second,

although the evidence of record does tend to support the proposition that SRCI Health Services initially adopted a conservative approach to addressing Melendez' reported symptoms, no evidence of record has any tendency to suggest that it was medically unreasonable to adopt a conservative approach initially, that it was reasonably foreseeable that a conservative approach would cause Melendez to suffer consequential harm, that the initial conservative approach did in fact cause Melendez to suffer any exacerbation of his condition, or that at any material time either defendant or any other member of SRCI Health Services personnel refused to provide Melendez with treatment for managing his pain symptoms (indeed, the evidentiary record tends to establish that at all times between February 22, 2013, and February 22, 2017, Melendez was receiving some form of pain management treatment from SRCI Health Services). Melendez may have disagreed with the conservative approach adopted by SRCI Health Services for addressing his pain symptoms, and it is possible that he would have obtained greater pain relief earlier had SRCI Health Services adopted a more aggressive approach earlier, but absent any evidence that the approach actually adopted was medically unreasonable and in light of the evidence of record that Gulick and other SRCI Health Services personnel continuously provided Melendez with medical care calculated to address his symptoms, as a matter of law a finder of fact could not find that the initial conservative approach constituted a breach "of constitutional proportions" of the government's duty to provide medical care to an incarcerated prisoner. *Hutchinson*, 838 F.2d at 394.

Third, there is no evidence of record with any tendency to suggest that there was any medically unreasonable delay in arranging Melendez' shoulder replacement surgeries, that the outcome of those surgeries would have been different and better but for the complained-of delay,

or that either defendant had at any material time actual or constructive knowledge that it was reasonably medically necessary for Melendez to undergo surgery sooner than he actually did. Absent any evidence tending to suggest in any degree either that defendants knew that it was medically necessary to schedule Melendez' surgeries more aggressively and yet declined to do so or that the complained-of delay in Melendez' surgeries caused him to suffer injury that he would not otherwise have suffered, in light of the evidence of record tending to establish that Gulick and other SRCI Health Services personnel continuously provided Melendez with medical care calculated to address and ameliorate his symptoms the complained-of delay is not actionable as cruel and unusual punishment as a matter of law. *See id.*; *see also, e.g., Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Fourth, the evidence of record tends to establish that, notwithstanding Melendez' contrary allegation, the evidence establishes that he has received post-surgery physical therapy from SRCI Health Services calculated to address his need for post-surgical rehabilitation of his shoulder joints, and there is no evidence of record with any tendency to suggest that his post-surgery physical therapy was medically unreasonable or inadequate. In light of the evidence that he received medical treatment in the form of physical therapy, in the absence of evidence tending to suggest in any degree that the physical therapy he received was inadequate, a finder of fact could not reasonably find on the basis of the evidentiary record that Melendez suffered a constitutional deprivation of his right to post-surgery physical therapy. *See Hutchinson*, 838 F.2d at 394.

For the foregoing reasons, defendants have met their burden to establish the absence of any material question of fact as to whether Melendez suffered an actionable deprivation of his Eighth Amendment right to freedom from cruel and unusual punishment. In consequence,

defendants' motion (#23) for summary judgment is granted as to Melendez' Eighth Amendment claim.

II. **Melendez' Oregon Constitutional Claim**

> The Oregon Constitution, Article I, Section 16, provides in part, "Cruel and unusual punishments shall not be inflicted, but all penalties shall be proportioned to the offense." This encompasses two elements, a prohibition on "cruel and unusual punishment," and a proportionality requirement as to sentencing. *State v. Wheeler*, 343 Or. 652, 656, 175 P.3d 438 (2007). Oregon courts have largely interpreted the Oregon State Constitution's prohibition of cruel and unusual punishment parallel to the U.S. Constitution Eighth Amendment prohibition of cruel and unusual punishment. *E.g., State v. Baker*, 346 Or. 1, 4-6, 202 P.3d 174 (2009); *Billings v. Gates*, 323 Or. 167, 181, 916 P.2d 291 (1996); *Keenan v. Maass*, 149 Or. App. 576, 578-79, 945 P.2d 526 (1997). Oregon courts have provided some additional guidance on what constitutes cruel and unusual punishment under the state constitution: "[T]he phrase 'cruel and unusual punishments' . . . connotes a conscious choice on the part of prison officials to inflict punishment on an inmate. The reference in Article I, section 16, to punishments that are 'inflicted' also suggests that the punisher must have some level of intent or purpose." *Billings*, 323 Or. at 167 (quotation omitted).

*Taylor v. Ridley*, Case No. 2:18-cv-00314-SU, 2018 U.S. Dist. LEXIS 123499, at *10-11 (D. Or. July 24, 2018). Indeed, in *Billings*, the Oregon Supreme Court expressly held that "the Eighth Amendment's 'deliberate indifference to serious medical needs' standard is the appropriate standard under Article I, section 16" of the Oregon Constitution. *Billings v. Gates*, 323 Or. 167, 180 (1996). It follows that Melendez' Oregon constitutional claim is viable only to the extent that his Eighth Amendment claim is viable. Because for the reasons set forth above a finder of fact could not reasonably conclude on the basis of the evidence of record that defendants' complained-of conduct constituted an actionable deprivation of Melendez' Eighth Amendment rights, Melendez' Oregon constitutional claim cannot survive defendants' motion for summary judgment. Defendants' ' motion (#23) for summary judgment is therefore granted as to Melendez' Oregon constitutional claim.

Page 12 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, defendants' motion (#23) for summary judgment is granted. A final judgment shall be prepared.

Dated this 18th day of September, 2018.

Paul Papak
Honorable Paul Papak
United States District Judge

Page 13 - OPINION AND ORDER